J-S68028-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA,  :  IN THE SUPERIOR COURT OF
:        PENNSYLVANIA
           Appellee    :
:
      v.                 :
:
DAVID COIT,              :
:
           Appellant    :  No. 2531 EDA 2014

Appeal from the Judgment of Sentence April 4, 2014,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0003188-2011

BEFORE:  BENDER, P.J.E., DONOHUE and MUNDY, JJ.

MEMORANDUM BY DONOHUE, J.:         **FILED DECEMBER 07, 2015**

Appellant, David Coit ("Coit"), appeals from the judgment of sentence

entered on April 4, 2014 in the Court of Common Pleas, Philadelphia County,

following his conviction of possessing an instrument of crime ("PIC"), 18

Pa.C.S.A. § 907(a).  For the reasons set forth herein, we affirm.

The trial court provided the following summary of the facts:

> On the night of December 4, 2010, [Coit] resided
> at 4149 North Franklin Street with his mother and
> several children including the victim, [Coit's] then
> nineteen[-]year-old daughter, Bernice Santiago
> [("Santiago")].  Benjamin Baker [("Baker")], a
> neighbor and resident of 4150 North Franklin Street
> located directly across the street from [Coit's] home,
> testified that shortly before 7 p.m. he heard multiple
> people yelling and fighting outside of [Coit's] home
> immediately before [] Santiago ran into his home
> screaming hysterically and bleeding profusely.  N.T.
> 1/8/2014 at 46-47.  [] Santiago ran into [] Baker's
> kitchen and yelled for him to call the police.  **Id.** at
> 47, 49.  Within minutes[, Coit] followed his daughter

into [] Baker's home, armed with a double edged Jim Bowie hunting knife in his hand. *Id.* at 47-48. By the time [] Baker was able to reach [] Santiago, [Coit] was attacking her. *Id.* at 49. As his daughter lay on the floor struggling and attempting to defend herself [Coit] was punching her with the knife in his hand. *Id.* at 49, 54. [] Baker further testified that during the attack, he saw [] Santiago grab and hold onto the knife that [Coit] held within inches of her face. *Id.* at 62. As [] Santiago continued to scream for [] Baker to call 911, [Coit] dragged her out of [] Baker's home by her hair, leaving a trail of blood behind. *Id.* at 47, 50.

Within minutes, officers responded to a radio call of a person with a weapon in the area of 4149 North Franklin Street in Philadelphia County. N.T. 1/7/2014 at 5-6, 35. Officers arrived at that location and observed [Coit's] daughter with blood on her chest, both hands and arms, and screaming for help. *Id.* at 6-7. [] Santiago had numerous cut marks, and her left hand appeared to be severely injured. *Id.* at 12, 23. She was hysterical, hostile, nervous and crying. *Id.* at 7, 23. Officers observed a blood trail from the steps of the victim's home, 4149 North Franklin Street to [] Baker's home across the street, 4150 North Franklin Street. *Id.* at 7-8, 13-14.

At the time of the above, other officers observed a half[-]clothed young black male, armed with a knife, approach and stop an older black man. *Id.* at 22, 52. The younger male, later identified as [Coit's] son and [Santiago's] brother Kevin Coit, was briefly detained, while the older male, not yet identified as [Coit], walked away and was not immediately pursued. *Id.* at 6-7, 12-13, 22, 52. Officers questioned [Coit's] son and concluded that he was not the assailant. *Id.* at 52. Officers then placed Kevin Coit in their vehicle to escort him to the police station for further questioning. *Id.* at 52-53. As the vehicle drove eastbound on Bristol Street, Kevin Coit tapped on the window and yelled "that's him, that's

him[,]" which alerted the officers that [Coit] had just entered a neighborhood bar. *Id.*

After receiving a description of [Coit], other officers while approaching the crime scene, also observed [Coit] walk into the neighborhood bar which was located at 8th and Bristol Street, approximately [one and a half] blocks away from the crime scene. *Id.* at 36. These officers exited their patrol vehicle, entered the bar and observed [Coit] inside. *Id.* at 37. [Coit] was wearing a grey sweatshirt that was covered in blood with identifiable bloodstains on both shoulders, the right sleeve, the back of the neck area, and scattered all over the front particularly on the pocket area. *Id.* at 40-41, 54, 125-26. As the officers approached [Coit], he was noticeably "wound up," erratic, hostile and noncompliant. *Id.* When officers attempted to detain him, [Coit] resisted and a brief struggle ensued before he was secured by force. *Id.* After [Coit] was detained, he was taken back to [] Baker's home, where [] Baker positively identified him as [] Santiago's attacker. *Id.* at 51.

Paramedics arrived on the scene and assessed, treated and transported [] Santiago to Einstein Medical Center. *Id.* at 73. Paramedics identified [] Santiago's injuries as lacerations or stab wounds to the hands and arms, and bruises and bite marks to other parts of the body. *Id.* at 75. Detective Ramonita King examined the inside of [Coit's] and [Santiago's] home and observed that the furniture was thrown around and appeared out of place, evidencing signs of a struggle. *Id.* at 85. Detective King also observed a trail of blood beginning inside of the living room area of the home leading down the steps of the property, onto the sidewalk, across the street and inside [] Baker's home, 4150 North Franklin Street. *Id.* at 85-86, 88. Detective King then traveled to the Einstein Medical Center emergency room where she unsuccessfully attempted to interview the victim who was hysterical, screaming and crying "I'm scared[.]" *Id.*

at 89-90. Detective King observed that the fingers on [] Santiago's left hand were severely lacerated and appeared to be dangling, nearly completely severed. *Id*. at 90. The victim was extremely frightened and was visibly shaking while crying and screaming "I'm afraid, don't let him in here" every time medical staff entered the examination room. *Id.* at 90-91. Detective King's attempts to console and ease [Santiago's] fears were unsuccessful and medical staff was forced to restrain and sedate her in order to render medical assistance. *Id*. at 90-93. Thereafter, Detective King and other officers were unable to locate, interview or subpoena [] Santiago for trial. *Id*. at 93-94, 129. [] Santiago did not appear or testify at trial.

Dr. Ralph Riviello [("Dr. Riviello")], Professor of Emergency Medicine at Drexel University College of Medicine and the Attending Physician at Hahnemann University Hospital Emergency Room, testified as the Commonwealth's expert witness and offered his opinions after reviewing [] Santiago's medical records. N.T. 1/8/2014 at 7, 16, 30. Dr. Riviello testified that he reviewed [] Santiago's December 4, 2010 Albert Einstein Medical Center medical records which identified her as a trauma patient. *Id*. at 8, 18. Dr. Riviello stated that [] Santiago's injuries were a three [] x two [] centimeter incise wound or cut to the outside of her upper left arm and a continuing slash stretching across the palm surface of her left hand fingers, as well as multiple bruises from being punched all over her body. *Id*. at 19-21. In addition, [] Santiago was diagnosed with a complex finger laceration, a lower lip abrasion and a human bite to the right shoulder. *Id*. at 22-23. Dr. Riviello opined that [] Santiago's incise wounds or cuts appeared to be defensive wounds that were likely sustained when she attempted to protect the central core of her body. In raising her hands to protect her face, the knife cut across her fingers and potentially stabbed into them in the process. *Id*. at 24. Dr. Riviello further explained that when an awake and alert person's face or other core area is

> attacked with a sharp weapon, the natural instinct is to raise one's hands as a defensive mechanism, thereby often suffering injury to the hands. *Id.* at 25. Dr. Riviello also testified that [] Santiago sustained a significantly concerning tendon laceration in her left hand fingers. *Id.* at 26.

Trial Court Opinion, 3/18/15, at 2-5 (footnote omitted).

Coit was charged with attempted murder, aggravated assault, burglary, criminal trespass, PIC, terroristic threats, simple assault, recklessly endangering another person, resisting arrest, and criminal mischief.[1] A jury trial commenced on January 7, 2014 and on January 9, 2014, the jury returned a verdict of not guilty on the attempted murder and aggravated assault charges, but found Coit guilty of PIC.[2] On April 4, 2014, the trial court sentenced Coit to two and a half to five years of incarceration, to run consecutive to the sentence he was already serving.[3]

On April 13, 2014, Coit filed a post-sentence motion alleging that the verdict was against the weight of the evidence and that the sentence was excessive. Coit requested that the trial court vacate his conviction and grant a new trial, or in the alternative, vacate the sentence and resentence him. On April 17, 2014, while his post-sentence motion was pending, Coit filed a

---

[1] 18 Pa.C.S.A. §§ 901(a), 2502, 2702(a), 3502(a), 3503(a)(1)(i), 907(a), 2706(a)(1), 2701(a), 2705, 5104, 3304(a)(4).

[2] All other charges were nolle prossed prior to trial.

[3] At the time of sentencing, Coit was serving a sentence of seven to fourteen years of incarceration for aggravated assault stemming from an unrelated incident docketed at CR-0005384-2010.

pro se motion for reconsideration of sentence requesting that his sentence run concurrent with his current state sentence. On August 12, 2014, the trial court denied Coit's post-sentence motion and motion for reconsideration.

On August 18, 2014, Coit filed a notice of appeal to this Court and statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On appeal, Coit raises the following two issues for our review:

> 1. Was not the verdict contrary to the weight of the evidence because the evidence presented during trial was unreliable and untrustworthy to such a degree that the verdict based on that evidence shocks one's sense of justice and, therefore, a new trial is necessary to cure the injustice?
>
> 2. Was not the sentence excessive because [Coit's] prior record score, sentencing guidelines, current time of incarceration, and the maximum penalty for the crime for which [he] was found guilty would all suggest that the sentence imposed is excessive?

Coit's Brief at 5.

For his first issue on appeal, Coit argues that the trial court erred in denying his request for a new trial because the verdict was against the weight of the evidence. *Id.* at 15, 19. Coit asserts that the eyewitness testimony by Baker was inconsistent and "at odds with the expert's opinion and the medical records" regarding the injuries Santiago sustained. *Id.* at 15-16. He further argues that the police officers that testified "offered little

to no corroboration," failed to recover the knife, lost photographs of the scene of the crime, and failed to secure Santiago as a witness at trial. *Id.* at 17-18. As our Supreme Court has held:

> Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.** Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in the original) (citations omitted).

Accordingly, our review of Coit's claim does not involve revisiting the underlying question of whether the verdict was against the weight of the evidence. Instead, our review is limited to determining whether the trial court abused its discretion, by considering evidence that the judgment was "manifestly unreasonable or where the law [was] not applied or where the record shows that the action [was] a result of partiality, prejudice, bias or ill-will." *Id.*

In this case, Coit failed to present any argument as to how he believes the trial court abused its discretion. Instead, he directs his entire argument to the underlying question of whether his convictions are against the weight of the evidence, and argues that the inconsistencies in Baker's testimony are sufficient to invalidate the jury's findings. Coit's Brief at 15-17. As stated above, this is not the question before us for review.

Coit failed to provide us with any argument relative to our standard of review, and this Court will not develop an argument on his behalf. *See Commonwealth v. Gould*, 912 A.2d 869, 873 (Pa. Super. 2006). In addition, our independent review of the record provides us with ample support for the conclusion that the trial court did not abuse its discretion in deciding that the verdicts in this case were not against the weight of the evidence. We therefore find no merit to Coit's first issue.

For his second issue on appeal, Coit argues that the trial court imposed an excessive sentence. Coit's Brief at 20. Coit's challenge to his

- 8 -

sentence is directed to the discretionary aspects of his sentence. This Court has held, "Where an appellant challenges the discretionary aspects of a sentence, there is no automatic right to appeal and an appellant's appeal should be considered a petition for allowance of appeal." ***Commonwealth v. Crork***, 966 A.2d 585, 590 (Pa. Super. 2009).

> Before we reach the merits of this [issue], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

***Commonwealth v. Clarke***, 70 A.3d 1281, 1286 (Pa. Super. 2013) (citing ***Commonwealth v. Malovich***, 903 A.2d 1247, 1250 (Pa. Super. 2006)).

In this case, Coit filed a timely notice of appeal and preserved his claim on appeal in a post-sentence motion as well as in his Rule 1925(b) statement. Coit also included a statement pursuant to Rule 2119(f) of the Pennsylvania Rules of Appellate Procedure in his brief, which requires an appellant to "set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f). We are therefore left to determine whether a substantial question exists.

> The determination of what constitutes a substantial question must be evaluated on a case-

> by-case basis. A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (citing ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010)).

In his Rule 2119(f) statement, Coit presents two arguments that the trial court imposed a manifestly excessive and unreasonable sentence. Coit's Brief at 7. Coit argues that the trial court's imposition of a consecutive sentence to the sentence he is currently serving resulted in an excessive sentence. ***Id.*** at 7, 21. Coit further maintains that the trial court "only focused on the severity of the crimes and the retribution of the complainants and did not consider [his] rehabilitative needs [] at all." ***Id.***

In addressing Coit's claim, we recognize that "prior decisions from this Court involving whether a substantial question has been raised by claims that the sentencing court 'failed to consider' or 'failed to adequately consider' sentencing factors 'has been less than a model of clarity and consistency.'" ***Commonwealth v. Seagraves***, 103 A.3d 839, 842 (Pa. Super. 2014) (citing ***Commonwealth v. Dodge***, 77 A.3d 1263, 1272 n.8 (Pa. Super. 2013)).

In ***Commonwealth v. Griffin***, 65 A.3d 932 (Pa. Super. 2013), *appeal denied*, 76 A.3d 538 (Pa. 2013), this Court held that "[t]here is ample

precedent to support a determination that [a claim that the trial court failed to consider an appellant's rehabilitative needs] fails to raise a substantial question." *Id.* at 936-37 (citing cases). A panel of this Court recently held, however, that an appellant's "challenge to the imposition of [] consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs upon fashioning its sentence, presents a substantial question." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (en banc). As *Caldwell* addresses the precise issue that is presently before this Court, we conclude that Coit's assertion that the trial court imposed an excessive sentence by imposing a consecutive sentence and failing to consider his rehabilitative needs presents a substantial question for our review. Accordingly, we will address the merits of his claim.

In reviewing Coit's claim, we are mindful of our well-settled standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Coulverson*, 34 A.3d 135, 143 (Pa. Super. 2011) (quoting *Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa. Super. 1999) (en banc)).

"When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." *Griffin*, 65 A.3d at 937 (quoting *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002), *appeal denied*, 868 A.2d 1198 (Pa. 2005), *cert. denied*, 545 U.S. 1148 (2005)). "In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." *Commonwealth v. Antidormi*, 84 A.3d 736, 761 (Pa. Super. 2014) (internal citations omitted). This Court may not reweigh those factors or substitute our judgment for that of the sentencing court. *See Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009); *Commonwealth v. Marts*, 889 A.2d 608, 616 (Pa. Super 2005).

Moreover, our Supreme Court established that

> [w]here pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.

- 12 -

> This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Macias*, 968 A.2d at 778 (quoting ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988)).

In this case, the trial court stated on the record that it considered Coit's presentence investigation report, his mental health evaluation, his need for rehabilitation, and society's need for protection. N.T., 4/4/14, at 39-41. The trial court found that "[t]here [was] no reason for mitigation in this case" because Coit was vicious, manipulative, failed to accept responsibility or show remorse for his actions, choosing instead to deflect accountability, and "show[ed] little interest in advancing the interest of society." ***Id.*** at 40. The trial court also reviewed Coit's record and found that Coit had been arrested twenty times in his life (approximately half of which were rearrests and in satisfaction of bench warrants). ***Id.*** at 15-16; 41-42. Based on all of the factors and circumstances considered, the trial court determined that Coit should be sentenced to the maximum term of two and half to five years of incarceration. ***Id.*** at 42.

Following our review of the record, we conclude that the trial court adequately considered the relevant factors, including Coit's rehabilitative

needs, prior to issuing Coit's sentence. The record supports the trial court's findings, and thus, we find no abuse of discretion.

Moreover, we conclude that the trial court acted within its discretion by imposing Coit's sentence consecutively to the sentence he is currently serving. This Court has held that

> the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court. Long standing precedent of this Court recognizes that 42 Pa.C.S.A. § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed.

***Commonwealth v. Johnson***, 961 A.2d 877, 880 (Pa. Super. 2008) (internal citations omitted). Thus, finding no abuse of discretion, we affirm Coit's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/7/2015